**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONSTER ENERGY COMPANY, | ) | |
| | ) | Case No. 17-cv-04365 |
| Plaintiff, | ) | |
| | ) | **Judge John Z. Lee** |
| v. | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| ZHENG SHUANG, ZYGFRYD | ) | |
| SZCZEPAĄ„SKI, ZHANG JIKE, WU | ) | |
| RONGXIA, TYLER BARR, SUN HAI XIA, | ) | |
| SOPHISTICATEDYUM.COM.AU, | ) | |
| SHIKUNGEM.COM, POITOU- | ) | |
| MAGAZINE.FR, PAUL FIELD, NFL- | ) | |
| MALLS.COM, NAN NAN LI, MALCOLM | ) | |
| MUIRHEAD, MAKIBELL.FR, MAHARJAN | ) | |
| SUSAN, LISA LEONARD, LI LING HUANG, | ) | |
| LENNA HARRIS, LARA CERNEIRA | ) | |
| CARBALLO, KANG XIAOPING, JULIA | ) | |
| CORDERO, JUDE ACHEBE, JAMIE | ) | |
| KAVANAGH, HOU PING, GOGETEAT.NET, | ) | |
| GANG LONG HAN, DARREN CHARLES | ) | |
| RAISON, CHEN HANG, CHEN HANG, CHEN | ) | |
| DONG HAN, CAPSLIDS.COM, | ) | |
| BUYLEBRON9GALAXYONSALE.COM, | ) | |
| BUYLEBRON9GALAXY.NET, ANDY, | ) | |
| ANDREW TEAGUE, ALEXINA PLEDGER, | ) | |
| 0HK7446, 1_87072, 2014SUNQING888999, | ) | |
| 2016LONGTENG, 2CN2483, 36LIUHONG369, | ) | |
| ADIARBOSS, ATBA7821, | ) | |
| AUTOBOTS.HUSA, BAIDUDEBAI, | ) | |
| BAIXUNKEJI, BESTAUTO COMPANY | ) | |
| STORE, BJWANG89-1, | ) | |
| BOUTIQUEGROCERIES, CAR | ) | |
| MODIFICATION CLUB STORE, CHAONIU | ) | |
| CAR PRODUCTS CLUB STORE, | ) | |
| CHELAICHEWANG2016, CHINA TOWN-- | ) | |
| AUTO PARTS CO.,LTD, CHINAFLAVOR, | ) | |
| CKL8, DIVINTYMOTOR, DIYUAN STORE, | ) | |
| ECBUYGO, FANTASTICALMAC, FASHION | ) | |
| OUTDOOR SPORT, FASHION520 STORE, | ) | |
| FASHIONFOUSE888, | ) | |
| GREATWALLMARKET, | ) | |
| GREENWINDBELLLED, HAINING CITY | ) | |

PURUTE RACING FACTORY,                    )
HAOYUNYONGYUAN666, HELLORACER             )
STORE, HIGH-END PRODUCTION STORE,         )
HK2028, HK-SHUY, HOMOD JEWELRY            )
STORE, HOW-YES STORE, HSPEED STORE,       )
HUAHUANLE, HYDRO ARTS                     )
TECHNOLOGY CO., LTD., IGREEN B CAR        )
SERVICES STORE, ITREE, JACKLIAOB,         )
JIAFUDESHOP STORE, KE5558, LAGE2013,      )
LAUGHINGWORLD2014, LEADER MOTOR,          )
LIHONGXIN2012, LILAIJEWELRY2,             )
LIN_HAN62-6, LINJIECHONG, MINASON         )
GLOBAL SHOPPING STORE, MODIFIED           )
CLUB CAR STORE, MUCD3288, NATURE-         )
SKY, OCEAN-STONE, PITAYA_BOY,             )
QIAOMU STORE, RGNE7202,                   )
SAGETECHNOLOGY, SHENGHENG2012,            )
SHENZHEN JYC TECHNOLOGY LTD.,             )
SHINING CITY, SHOWERFIELD,                )
SIMONZYP2010, STARFIEDKNIGHT,             )
STONEMOMY, SUNRISE20160810, SUPER-        )
EMPORIUM-2, TOP RATED CAR                 )
ACCESSORIES, UNI-HELMET STORE,            )
VYXD9723, WUZHEN568, XIEYA668,            )
XUUE2132, YAHK084, YANLINGHOME,           )
YQBU2852, ZHANGRUIYANG8889992, and        )
ZHUKENCI,                                 )
                                          )
                Defendants.               )
_____   )

**AMENDED COMPLAINT**

Plaintiff Monster Energy Company ("MEC" or "Plaintiff") hereby brings the present

action against ZHENG SHUANG, ZYGFRYD SZCZEPAÅ„SKI, ZHANG JIKE, WU

RONGXIA, TYLER BARR, SUN HAI XIA, SOPHISTICATEDYUM.COM.AU,

SHIKUNGEM.COM, POITOU-MAGAZINE.FR, PAUL FIELD, NFL-MALLS.COM, NAN

NAN LI, MALCOLM MUIRHEAD, MAKIBELL.FR, MAHARJAN SUSAN, LISA

LEONARD, LI LING HUANG, LENNA HARRIS, LARA CERNEIRA CARBALLO, KANG

XIAOPING, JULIA CORDERO, JUDE ACHEBE, JAMIE KAVANAGH, HOU PING,

2

GOGETEAT.NET, GANG LONG HAN, DARREN CHARLES RAISON, CHEN HANG, CHEN HANG, CHEN DONG HAN, CAPSLIDS.COM, BUYLEBRON9GALAXYONSALE.COM, BUYLEBRON9GALAXY.NET, ANDY, ANDREW TEAGUE, ALEXINA PLEDGER, 0HK7446, 1_87072, 2014SUNQING888999, 2016LONGTENG, 2CN2483, 36LIUHONG369, ADIARBOSS, ATBA7821, AUTOBOTS.HUSA, BAIDUDEBAI, BAIXUNKEJI, BESTAUTO COMPANY STORE, BJWANG89-1, BOUTIQUEGROCERIES, CAR MODIFICATION CLUB STORE, CHAONIU CAR PRODUCTS CLUB STORE, CHELAICHEWANG2016, CHINA TOWN--AUTO PARTS CO.,LTD, CHINAFLAVOR, CKL8, DIVINTYMOTOR, DIYUAN STORE, ECBUYGO, FANTASTICALMAC, FASHION OUTDOOR SPORT, FASHION520 STORE, FASHIONFOUSE888, GREATWALLMARKET, GREENWINDBELLLED, HAINING CITY PURUTE RACING FACTORY, HAOYUNYONGYUAN666, HELLORACER STORE, HIGH-END PRODUCTION STORE, HK2028, HK-SHUY, HOMOD JEWELRY STORE, HOW-YES STORE, HSPEED STORE, HUAHUANLE, HYDRO ARTS TECHNOLOGY CO., LTD., IGREEN B CAR SERVICES STORE, ITREE, JACKLIAOB, JIAFUDESHOP STORE, KE5558, LAGE2013, LAUGHINGWORLD2014, LEADER MOTOR, LIHONGXIN2012, LILAIJEWELRY2, LIN_HAN62-6, LINJIECHONG, MINASON GLOBAL SHOPPING STORE, MODIFIED CLUB CAR STORE, MUCD3288, NATURE-SKY, OCEAN-STONE, PITAYA_BOY, QIAOMU STORE, RGNE7202, SAGETECHNOLOGY, SHENGHENG2012, SHENZHEN JYC TECHNOLOGY LTD., SHINING CITY, SHOWERFIELD, SIMONZYP2010, STARFIEDKNIGHT, STONEMOMY, SUNRISE20160810, SUPER-EMPORIUM-2, TOP RATED CAR ACCESSORIES, UNI-HELMET STORE, VYXD9723, WUZHEN568, XIEYA668, XUUE2132, YAHK084, YANLINGHOME, YQBU2852,

3

ZHANGRUIYANG8889992, and ZHUKENCI identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores").  Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of MEC's trademarks, unauthorized copies of MEC's federally registered copyrighted designs, or both (collectively, the "Unauthorized Monster Energy Products").  Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold Unauthorized Monster Energy Products to residents of Illinois.  Each of the Defendants is

committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused MEC substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by MEC to combat online counterfeiters who trade upon MEC's reputation and goodwill by selling and/or offering for sale Unauthorized Monster Energy Products.  The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine MEC products, while actually selling Unauthorized Monster Energy Products to unsuspecting consumers.  The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation.  MEC is forced to file this action to combat Defendants' counterfeiting of MEC's registered trademarks and infringement of MEC's registered copyrighted designs, as well as to protect unsuspecting consumers from purchasing Unauthorized Monster Energy Products over the Internet.  MEC has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted designs as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4.     Plaintiff MEC is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

5.      MEC is a nationwide leader in the business of developing, marketing, and selling beverages, including energy drinks.  In 2002, long before Defendants' acts described herein, MEC launched its MONSTER ENERGY® brand of drinks bearing its now famous MONSTER ENERGY mark,  mark ("Claw Icon Mark"), and copyrighted design (the "Monster Energy Copyrighted Design").  A true and correct representation of MEC's original MONSTER ENERGY® drink is shown below:



6.      MEC's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®; Juice Monster® Khaos®; Juice Monster® Ripper®; Juice Monster® Pipeline Punch®; Ubermonster®; Monster Energy® Import; Punch Monster®; Monster Energy® Absolutely Zero; Monster Energy® Zero Ultra; Monster Energy Ultra Blue®; Monster Energy Ultra Red®; Monster Energy Ultra Black®; Monster Energy Ultra Sunrise®; Monster Energy Ultra Citron®; Monster Energy® Gronk; Monster Rehab®, which is a line of non-carbonated energy drinks, which includes MEC's Monster Rehab® Raspberry Tea + Energy, Monster Rehab® Peach Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade +

Energy products; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; and Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink(referred to collectively as "MONSTER™ line of energy drinks").

    7.    Shown below are true and accurate representative pictures illustrating some of MEC's MONSTER™ line of drinks and the packaging for certain products in that line.



    8.    In addition to its MONSTER™ line of energy drinks, long before Defendants' acts described herein, MEC has used, and continues to use, its Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and the Monster Energy Copyrighted Design in connection with a large variety of other products, including, but not limited to, stickers, clothing items, helmets, headgear, sports gear, and sports bags that bear Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and/or the Monster Energy Copyrighted Design (collectively, the "Monster Energy Products"). Examples of authorized helmets, apparel and accessories bearing

MEC's Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and/or the Monster Energy Copyrighted Design are shown below.

<u>House Brand Line</u>





MONSTER ARMY™ Line



MUSCLE MONSTER™ Line



JAVA MONSTER™ Line



Claw Icon Helmets



9.     Since the initial launch of its original MONSTER ENERGY® drink in 2002, MEC's Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and the Monster Energy Copyrighted Design are and have been the subject of substantial and continuous marketing and promotion by MEC in connection with its MONSTER™ line of drinks and MONSTER™ apparel and accessories.  MEC has and continues to widely market and promote its Claw Icon Mark, MONSTER™ mark, MONSTER ENERGY® mark, and the Monster Energy Copyrighted Design.  MEC's promotional efforts include — by way of example but not limitation — substantial print media, the Monster Energy website and social media sites, point of sale materials, sponsorship of athletes and athletic teams, sponsorship of athletic competitions, sponsorship of musicians, sponsorship of live and televised events, sweepstakes, music concerts, attendance at trade shows, product sampling, and apparel and merchandise.

10.     Since the Claw Icon Mark and MONSTER ENERGY mark (collectively, the "MONSTER ENERGY Trademarks") are the MEC trademarks most commonly counterfeited and infringed by Defendants, MEC focuses its allegations on the MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design.

11.     MEC sponsors over 200 athletes and numerous athletic events in connection with its branded drinks, apparel, and accessories bearing one or both of the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Design.  For example, MEC sponsors or has sponsored sporting events such as the Monster Energy NASCAR Cup Series, X Games, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, the MONSTER ENERGY® Billabong XXL Awards from 2005 to 2012, MX 1 and MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World

Championship, the FIM MX Junior World Championship, and the UEM EMX2 European Motocross Championship. At MEC-sponsored events, the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Design are prominently promoted at the tracks, on banners, and on large transport, support, and hospitality tractor trailers, motor homes and other promotional vehicles.

12.     In addition to the sporting events above, MEC also sponsors or has sponsored athletes and athletic teams who compete in a wide variety of sports, including NASCAR, Formula 1, motocross, MotoGP, AMA Superbike, Supercross, World Superbike, snowmobile, off-road racing, off-road truck and thoroughbred horse racing, Ultimate Fighting Championship ("UFC") events, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, and mountain biking. Many of the events that the MEC-sponsored athletes and athletic teams compete in are broadcast nationally on television, and all of the MEC-sponsored athletes and teams wear clothing or gear or use equipment that prominently displays one or both of the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Design.

13.     MEC's MONSTER$^{TM}$ family of products has achieved substantial commercial success. Worldwide retail sales of the MONSTER$^{TM}$ line of energy drinks now exceed 3 billion cans per year with estimated retail sales exceeding US$6 billion per year worldwide. MEC has sold more than 19 billion cans of energy drinks worldwide, all of which bear the Claw Icon Mark, MONSTER™ Mark, the Monster Energy Copyrighted Design, and/or the MONSTER ENERGY® Mark. MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the U.S by unit volume. As a result of MEC's substantial use and promotion of the MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design in connection with its MONSTER$^{TM}$ family of products, MEC's MONSTER ENERGY

Trademarks and the Monster Energy Copyrighted Design have acquired great value as specific identifiers of MEC's products, are widely recognized by the general consuming public as a designation of the source of goods or services of MEC, and serve to identify and distinguish MEC's products from those of others. Customers in this judicial district and elsewhere readily recognize MEC's MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design as distinctive designations of the origin of MEC's drinks, accessories, clothing products, sports bags and backpacks, sports gear and other products and promotional items. MEC's MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design are intellectual property assets of enormous value as symbols of MEC and its quality products, reputation, and goodwill.

14.     MEC is the owner of numerous trademark registrations for the MONSTER ENERGY Trademarks, including, but not limited to, the following U.S. Trademark Registrations:

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 2,903,214 |  | Nov. 16, 2004 | For: Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |

| 3,057,061 | MONSTER ENERGY | Feb. 7, 2006 | For: fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
| --- | --- | --- | --- |
| 3,134,841 |  | Aug. 29, 2006 | For: Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not in class 032. |
| 4,051,650 |  | November 8, 2011 | For: Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies in class 025. |
| 3,963,669 |  | May 17, 2011 | For: All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags in class 018. |

| 3,963,668 |  | May 17, 2011 | For: Stickers; sticker kits comprising stickers and decals; decals; posters in class 016. |
|---|---|---|---|
| 3,923,683 |  | February 22, 2011 | For: All-purpose sport bags; all-purpose carrying bags; backpacks; duffle bags in class 018. |
| 3,908,601 |  | January 18, 2011 | For: Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies in class 025. |
| 3,908,600 |  | January 18, 2011 | For: Stickers; sticker kits comprising stickers and decals; decals in class 016. |

| 4,332,062 |  | May 7, 2013 | For: Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands in class 014. |
|---|---|---|---|
| 4,011,301 |  | August 16, 2011 | For: Sports helmets; video recordings featuring sports, extreme sports, and motor sports in class 009. |
| 3,914,828 |  | February 1, 2011 | For: Sports helmets in class 009. |
| 4,660,598 |  | December 23, 2014 | For: Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences in class 022. |

15.     The above U.S. registrations for the MONSTER ENERGY Trademarks are valid, subsisting, and in full force and effect.   True and correct copies of the federal trademark

16

registration certificates for the above MONSTER ENERGY Trademarks are attached hereto as **Exhibit 1**. Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214; 3,057,061; 3,134,841; 3,134,842; 3,908,600; 3,963,669; 3,963,668; and 3,908,601 are incontestable.

16. The MONSTER ENERGY Trademarks are distinctive and identify the merchandise as goods from MEC. The registrations for the MONSTER ENERGY Trademarks constitute *prima facie* evidence of their validity and of MEC's exclusive right to use the MONSTER ENERGY Trademarks pursuant to 15 U.S.C. § 1057 (b).

17. The MONSTER ENERGY Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and have been continuously used and never abandoned.

18. In addition to its use on its energy drinks, MEC has continuously used the MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design on and in connection with the creation and distribution of Monster Energy Products. These items have been worn or used by numerous high profile athletes and entertainers sponsored by MEC. MEC has also licensed the MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design to third parties for use on stickers, clothing items, automotive parts, protective gear and sports bags. MEC has promoted its MONSTER™ drinks and Monster Energy Products in interstate and intrastate commerce, including commerce in the State of Illinois, and in this Judicial District.

19. MEC has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from MEC.

20.     Because of MEC's advertising and promotional efforts and its continuous use of the MONSTER ENERGY Trademarks for more than a decade, MEC is among the most recognized energy drink brands in the United States, and the MONSTER ENERGY Trademarks have become famous.

21.     MEC has registered its Monster Energy Copyrighted Design with the United States Copyright Office.  The registrations include, but are not limited to, "Stylized claw with jagged edges (original version)" (U.S. Copyright Registration No. VA 1-789-900), issued by the Register of Copyrights on October 11, 2011, and the corresponding supplemental registration changing ownership name from Hansen Beverages Company to Monster Energy Company: VA 1-433-242.  A true and correct copy of the U.S. federal copyright registration certificate for the above-referenced Monster Energy Copyrighted Design is attached hereto as **Exhibit 2**.

22.     Among the exclusive rights granted to MEC under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Monster Energy Copyrighted Design to the public.

**The Defendants**

23.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Unauthorized Monster Energy Products to consumers within the United States, including the State of Illinois.

24.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the MONSTER ENERGY Trademarks and/or unauthorized copies of the Monster Energy Copyrighted Design in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for MEC to learn Defendants' true identities and the exact interworking of their network.  In the event that Defendants provide additional credible information regarding their identities, MEC will take appropriate steps to amend the Amended Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

25.     The success of the Monster Energy brand has resulted in its significant counterfeiting.  Consequently, MEC has a worldwide brand protection program and regularly investigates and/or has its agents investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  MEC has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale, selling, and importing Unauthorized Monster Energy Products to consumers in this Judicial District and throughout the United States.  Despite MEC's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.

Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

26.     Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unsuspecting consumers to be authorized online retailers, outlet stores, or wholesalers.  Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal.  The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos.  MEC has not licensed or authorized Defendants to use its MONSTER ENERGY Trademarks or copy or distribute the Monster Energy Copyrighted Design, and none of the Defendants are authorized retailers of genuine Monster Energy Products.

27.     Upon information and belief, many Defendants also deceive unknowing consumers by using the MONSTER ENERGY Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Monster Energy Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Monster Energy Products.  Other Defendants only show MONSTER

ENERGY Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Monster Energy Products.

28.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Unauthorized Monster Energy Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being unauthorized, suggesting that the Unauthorized Monster Energy Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain

21

redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from MEC's monsterenergy.com website.

30.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

31.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of MEC's enforcement efforts.  Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

32.     Defendants, without any authorization or license from MEC, have knowingly and willfully used and continue to use the MONSTER ENERGY Trademarks and/or copies of the

Monster Energy Copyrighted Design in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Monster Energy Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Unauthorized Monster Energy Products into the United States, including Illinois.

33. Defendants' unauthorized use of the MONSTER ENERGY Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Monster Energy Products, including the sale of Unauthorized Monster Energy Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming MEC.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

34. MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MONSTER ENERGY Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MONSTER ENERGY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Monster Energy Products offered, sold or marketed under the MONSTER ENERGY Trademarks.

36. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MONSTER ENERGY Trademarks without MEC's permission.

37.     MEC is the exclusive owner of the MONSTER ENERGY Trademarks. MEC's United States Registrations for the MONSTER ENERGY Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of MEC's rights in the MONSTER ENERGY Trademarks, and are willfully infringing and intentionally using counterfeits of the MONSTER ENERGY Trademarks. Defendants' willful, intentional and unauthorized use of the MONSTER ENERGY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     MEC has no adequate remedy at law, and if Defendants' actions are not enjoined, MEC will continue to suffer irreparable harm to its reputation and the goodwill of its famous MONSTER ENERGY Trademarks.

40.     The injuries and damages sustained by MEC have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Monster Energy Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41.     MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

42.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Monster Energy Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with MEC or

the origin, sponsorship, or approval of Defendants' Unauthorized Monster Energy Products by MEC.

43.     By using the MONSTER ENERGY Trademarks on the Unauthorized Monster Energy Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Monster Energy Products.

44.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Monster Energy Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     MEC has no adequate remedy at law and, if Defendants' actions are not enjoined, MEC will continue to suffer irreparable harm to its reputation and the associated goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

46.     MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45.

47.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Unauthorized Monster Energy Products as those of MEC, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Monster Energy Products, representing that their products have MEC's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

25

48. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

49. MEC has no adequate remedy at law, and Defendants' conduct has caused MEC to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, MEC will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### COUNT IV
### COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

50. MEC hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 49.

51. MEC is the owner of a valid and enforceable Monster Energy Copyrighted Design, which contain certain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq*.

52. MEC has complied with the registration requirements of 17 U.S.C. § 411(a) for the Monster Energy Copyrighted Design and has obtained Copyright Registration No. VA 1-789-900, and the corresponding supplemental registration changing ownership name from Hansen Beverages Company to Monster Energy Company: VA 1-433-242.

53. Defendants do not have any ownership interest in the Monster Energy Copyrighted Design. Defendants had access to the Monster Energy Copyrighted Design via the internet.

54. Without authorization from MEC, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Monster Energy Copyrighted Design on the Defendant Internet Stores and the corresponding Unauthorized Monster Energy Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Monster Energy Copyrighted Design.

Such conduct infringes and continues to infringe the Monster Energy Copyrighted Design in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

55.     Defendants reap the benefits of the unauthorized copying and distribution of the Monster Energy Copyrighted Design in the form of revenue and other profits that are driven by the sale of Unauthorized Monster Energy Products.

56.     The Defendants have unlawfully appropriated MEC's protectable expression by taking material of substance and value and creating Monster Energy Products that capture the total concept and feel of the Monster Energy Copyrighted Design.

57.     Upon information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to, MEC's rights.

58.     The Defendants, by their actions, have damaged MEC in an amount to be determined at trial.

59.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, MEC great and irreparable injury that cannot fully be compensated or measured in money.  MEC has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, MEC is entitled to a preliminary and permanent injunction prohibiting further infringement of the Monster Energy Copyrighted Design.

## PRAYER FOR RELIEF

WHEREFORE, MEC prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the MONSTER ENERGY Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Monster Energy Product or is not authorized by MEC to be sold in connection with the MONSTER ENERGY Trademarks;

b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Design in any manner without the express authorization of MEC;

c.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Monster Energy Product or any other product produced by MEC that is not MEC's or not produced under the authorization, control, or supervision of MEC and approved by MEC for sale under the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Design;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Monster Energy Products are those sold under the authorization, control, or supervision of MEC, or are sponsored by, approved by, or otherwise connected with MEC;

e.  further infringing the MONSTER ENERGY Trademarks and/or the Monster Energy Copyrighted Design and damaging MEC's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for MEC, nor authorized by MEC to be sold or offered for sale, and which bear any MEC trademark, including the

MONSTER ENERGY Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Monster Energy Copyrighted Design;

2) Entry of an Order that, at MEC's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to MEC, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of MEC's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of MEC's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon MEC's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the MONSTER ENERGY Trademarks and/or which bear the Monster Energy Copyrighted Design;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MONSTER ENERGY Trademarks and/or which bear the Monster Energy Copyrighted Design; and

c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to MEC all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MONSTER ENERGY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that MEC be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MONSTER ENERGY Trademarks;

6) As a direct and proximate result of Defendants' infringement of the Monster Energy Copyrighted Design, MEC is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

7) Alternatively, and at MEC's election prior to any final judgment being entered, MEC is entitled to the maximum amount of statutory damages provided by law, $150,000 per work

infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

8) MEC is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a);

9) That Defendants be ordered to destroy any products bearing the MONSTER ENERGY Trademarks, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, pursuant to 15 U.S.C. § 1118;

10) That Defendants be ordered to deliver and destroy all devices, literature, advertising, goods, and other unauthorized materials bearing the Monster Energy Copyrighted Design pursuant to 17 U.S.C. § 503 (b); and

11) Award any and all other relief that this Court deems just and proper.

Dated this 12th day of June 2017.          Respectfully submitted,


/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Monster Energy Company*