IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, | Case No. 17-cv-04365 |
| Plaintiff, | |
| v. | **Judge John Z. Lee** |
| ZHENG SHUANG, et al., | **Magistrate Judge Young B. Kim** |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DEFENDANTS IDENTIFIED IN SCHEDULE A, WITH THE EXCEPTION OF DEFENDANT DIVINTYMOTOR**

# I. INTRODUCTION

Plaintiff Monster Energy Company ("MEC") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the defendants identified on Schedule A, with the exception of defendant divintymotor, (collectively, the "Defaulting Defendants") based on MEC's action for trademark infringement, counterfeiting, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act and copyright infringement.

# II. STATEMENT OF FACTS

MEC is a nationwide leader in the business of developing, marketing, and selling beverages, including energy drinks. Amended Complaint, [10] at ¶ 5. MEC is the owner of numerous trademark registrations for its MONSTER ENERGY and Claw Icon Marks, including, but not limited to, several United States Registrations (collectively, the "MONSTER ENERGY Trademarks"). *Id*. at ¶ 14. In addition, MEC is the owner of federally registered Copyright Registration No. VA 1-789-900, and the corresponding supplemental registration changing ownership name from Hansen Beverages Company to Monster Energy Company: VA 1-433-242 (the "Monster Energy Copyrighted Design"). *Id.* at ¶ 21. Additional factual assertions regarding MEC in Paragraphs 4 – 22 of the Amended Complaint are incorporated herein. *Id*. at ¶¶ 4 – 22.

Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Domain Names and Online Marketplace Accounts (collectively, the "Defendant Internet Stores") identified in Schedule A. *Id*. at ¶ 23. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell products

using counterfeit versions of MEC's trademarks, unauthorized copies of MEC's federally registered copyrighted designs, or both (collectively, the "Unauthorized Monster Energy Products") to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions regarding to Defaulting Defendants in Paragraphs 23 – 33 of the Amended Complaint are incorporated herein. *Id.* at ¶¶ 23-33.

MEC filed this action on June 9, 2017 [1], and soon thereafter filed an Amended Complaint [10]. On June 20, 2017, this Court granted MEC's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") and subsequently converted the TRO [26] to a Preliminary Injunction [33]. Paragraph 8 of the TRO permitted MEC to complete service of process to Defendants by electronic mail or electronic publication at the Defendant Domain Names which were transferred to MEC's control. [26]. The Defendants were properly served with the Amended Complaint on June 28, 2017. [27]. None of the Defaulting Defendants have filed an answer or otherwise pled in this action. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), MEC now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of MEC's Amended Complaint. Fed. R. Civ. P. 55(a) and (b)(2). MEC further seeks an award of statutory damages against each of the Defaulting Defendants as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting and as authorized by 17 U.S.C. § 504(c)(2) for willful infringement of the Monster Energy Copyrighted Design. MEC also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Unauthorized Monster Energy Products, using the MONSTER ENERGY Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly

displaying the Monster Energy Copyrighted Design, an Order that the domain names used by Defaulting Defendants to sell such products be permanently transferred to MEC, and that all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc., as well as any newly discovered assets, be transferred to MEC.

## III. ARGUMENT

A.     **JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to MEC's business within this Judicial District. See [10] at ¶¶ 2, 23, 32 and 33; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, commercial Internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois and, on

3

information and belief, has sold Unauthorized Monster Energy Products to consumers within the United States, including the State of Illinois. [10] at ¶ 2. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Unauthorized Monster Energy Products. [10] at ¶ 2. *See, Monster Energy Co. v. Chen Wensheng, et al.,* 2015 U.S. Dist. Lexis 132283, at *11 (N.D. Ill. Sept. 29, 2015); *Deckers Outdoor Corp. v. Does 1-55,* No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (unpublished) (Docket Nos. 68 and 69).

**B.    MEC HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On June 12, 2017, MEC filed its Amended Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), false designation of origin, 15 U.S.C. § 1125(a) (Count II), violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.* (Count III) and copyright infringement, 17 U.S.C. §§ 106 and 501 (Count IV). [10]. The Defendants were properly served with the Amended Complaint on June 28, 2017. [27]. Despite having been served with process, none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Gaudio Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, MEC asks for entry of default against the Defaulting Defendants.

## C. MEC HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, MEC served Defendants on June 28, 2017. [27]. More than twenty-one (21) days have passed since the Defaulting Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, MEC requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeit MONSTER ENERGY Trademarks, and by 17 U.S.C. § 504(c)(2) for willful infringement of the Monster Energy Copyrighted Design on products sold through the Defendant Internet Stores. MEC also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Unauthorized Monster Energy Products, using the MONSTER ENERGY Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Design, an order that domain names used by Defaulting Defendants to sell such products be permanently transferred to MEC, and that all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc. and any newly identified accounts be transferred to MEC.

1. **Trademark Infringement and Counterfeiting, False Designation of Origin, and Violation of the Illinois Uniform Deceptive Trade Practices Act**

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001). This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

MEC alleged in its Amended Complaint that its MONSTER ENERGY Trademarks are highly distinctive marks, that Defaulting Defendants have knowledge of MEC's rights in the MONSTER ENERGY Trademarks, that Defaulting Defendants are not authorized to use the MONSTER ENERGY Trademarks, and that Defaulting Defendants' use of the MONSTER ENERGY Trademarks causes a likelihood of confusion. [10] at ¶¶ 35-37.

MEC alleged in its Amended Complaint that Defaulting Defendants are using the federally registered MONSTER ENERGY Trademarks without authorization on the Unauthorized Monster Energy Products. [10] at ¶¶ 26, 27, and 32. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation or sponsorship of Defaulting Defendants' Unauthorized Monster Energy Products with MEC's genuine Monster Energy Products. *Id.* at ¶ 42.

MEC further alleged in its Amended Complaint that Defaulting Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their Unauthorized

Monster Energy Products as those of MEC's, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with genuine Monster Energy Products, representing that their Unauthorized Monster Energy Products have MEC's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.  [10] at ¶ 47.

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in MEC's Amended Complaint as true.  *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008).  Accordingly, MEC requests entry of judgment with respect to Counts I, II and III for willful trademark infringement and counterfeiting of the MONSTER ENERGY Trademarks, willful false designation of origin, and willful violation of the Illinois Uniform Deceptive Trade Practices Act against the Defaulting Defendants.

### 2. Copyright Infringement of Copyright Registration No. VA 1-789-900 and Supplemental Copyright Registration VA 1-433-242.

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright."  17 U.S.C. § 501. Among these exclusive rights granted to MEC under the Copyright Act are the exclusive rights to reproduce, prepare derivative works, distribute copies of, and display the Monster Energy Copyrighted Design to the public.  17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted).  MEC alleged in its Amended Complaint that MEC is the owner of valid, enforceable and federally

registered Monster Energy Copyrighted Design. [10] at ¶ 21, 51. MEC further alleged that Defaulting Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Monster Energy Copyrighted Design on the Defendant Internet Stores and the corresponding Unauthorized Monster Energy Products in violation of 17 U.S.C. §§ 106(1)-(3), (5). [10] at ¶¶ 54. MEC, therefore, requests entry of judgment with respect to Count IV for willful copyright infringement of the Monster Energy Copyrighted Design.

D.  **MEC IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF**

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

MEC has expended substantial time, money and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. [14] at ¶ 10. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products exclusively sourced from MEC. *Id.* The success of the Monster Energy brand has resulted in its significant counterfeiting, so MEC has instituted a worldwide brand protection program and regularly conducts investigations to root out counterfeiting activity. *Id.* at ¶ 13.

   1.  **Plaintiff Is Entitled to Statutory Damages for Trademark Counterfeiting**

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered

8

for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *9, (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### i. Defaulting Defendants' Trademark Counterfeiting Was Willful

As alleged in MEC's Amended Complaint, Defaulting Defendants facilitated sales by designing their Defendant Internet Stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. [10] at ¶ 26. Pursuant to 15 U.S.C. § 1117(e), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator ... knowingly provided ... materially false contact information to a domain name registrar...." 15 U.S.C. § 1117(e). Many of Defaulting Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. [10] at ¶ 28. Thus, willfulness is presumed in the instant case under 15 U.S.C. § 1117(e).

Even without the statutory presumption, it is clear that Defaulting Defendants' infringement was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a

reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. Further, in the Seventh Circuit "willful blindness" is equivalent to actual knowledge. *See Microsoft Corp. v. V3 Solutions, Inc.*, 2003 U.S. Dist. LEXIS 15008, at *44 (N.D. Ill. Aug. 27, 2003) (*citing Hard Rock Cafe Licensing Corp. v Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)). In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for MEC's rights in the MONSTER ENERGY Trademarks. [10] at ¶¶ 26, 28 and 29; *see also* [15] and [16].

Finally, District Courts have deemed trademark infringement willful when defendants default. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

### ii. A High Statutory Damages Award Is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright

infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014)

(unpublished) (Docket Nos. 44 and 45) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), MEC respectfully requests the Court's entry of an award of two hundred fifty thousand dollars ($250,000) per Defaulting Defendant for willful trademark counterfeiting.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Monster Energy] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. The Monster Energy brand is a valuable brand, and MEC spends considerable resources marketing and protecting it. [14] at ¶¶ 10 and 14. MEC achieved gross sales of over $3.5 billion in 2016. Gaudio Declaration at ¶ 5. Thus, MEC's request for a high statutory damages award should be given favorable consideration in view of the value of the Monster Energy brand and the extensive steps being taken by MEC to protect, promote and

enhance it.

## 2. Plaintiff Is Entitled to Statutory Damages for Copyright Infringement

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving copyright infringement may elect to receive statutory damages of "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

As mentioned above, the Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). See page 11, *supra*. Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (Finding that "[w]illful blindness is knowledge, in copyright law").

In this case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for MEC's rights in the Monster Energy Copyrighted Design. Additionally, in similar cases involving willful copyright infringement, courts have awarded significant damages, including up to the maximum provided by law. *See Monster Energy Company v. Chen Wensheng, et al.;* No. 1:15-cv-4166 (N.D. Ill. Jul. 27, 2015) (unpublished) (Docket No. 85) (awarding $50,000 in statutory damages per defendant for willful copyright infringement); *Monster Energy Company v. Zhao Min, et al.;* No. 1:15-cv-9142 (N.D.

Ill. Dec. 12, 2015) (unpublished) (Docket No. 46) (awarding $25,000 in statutory damages per defendant for willful copyright infringement); *Monster Energy Company v. Xianda Lin, et al.;* No. 1:16-cv-0622 (N.D. Ill. Mar. 14, 2016) (unpublished) (Docket No. 51) (awarding $150,000 in statutory damages per defendant for willful copyright infringement). Thus, MEC's request for a statutory damages award in the amount of one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement of the Monster Energy Copyrighted Design is appropriate.

### 3. MEC Is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, MEC respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating MEC's registered intellectual property rights in the MONSTER ENERGY Trademarks and the Monster Energy Copyrighted Design, including at least all injunctive relief previously awarded by this Court to MEC in the TRO and Preliminary Injunction. MEC is also entitled to injunctive relief so it can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling such products. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## IV. <u>CONCLUSION</u>

MEC respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of two hundred fifty thousand dollars ($250,000) per Defaulting Defendant for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c), award one hundred thousand dollars ($100,000) per Defaulting Defendant for

willful copyright infringement pursuant to 17 U.S.C. § 504(c), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Unauthorized Monster Energy Products, using the MONSTER ENERGY Trademarks without authorization, and reproducing, distributing copies of, making derivative works of, or publicly displaying the Monster Energy Copyrighted Design, permanently transferring the domain names used by Defaulting Defendants to sell such products to MEC, and transferring all assets in Defaulting Defendants' financial accounts operated by PayPal, Inc. to MEC.

Dated this 26th day of July 2017.  Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Attorneys for Plaintiff Monster Energy Company*

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website to which the Defendant Domain Names that have been transferred to MEC's control now redirect, and I will send an e-mail to the e-mail addresses identified in Exhibits 3 and 4 to the Declaration of Bruce Kingsland and any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Attorneys for Plaintiff Monster Energy Company*