# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, ) | |
| ) | Case No. 17-cv-04365 |
| Plaintiff, ) | |
| ) | **Judge John Z. Lee** |
| v. ) | |
| ) | **Magistrate Judge Young B. Kim** |
| ZHENG SHUANG, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
FED. R. CIV. P. 37 SANCTIONS AND DEFAULT JUDGMENT AGAINST THE
<u>DEFENDANT DIVINTYMOTOR</u>**

## I. INTRODUCTION

Plaintiff Monster Energy Company ("MEC") submits the following memorandum in support of its Motion for Fed. R. Civ. P. 37 Sanctions and Default Judgment as to Defendant divintymotor ("Defendant") based on MEC's action for trademark infringement, counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act.

## II. STATEMENT OF FACTS

MEC is a nationwide leader in the business of developing, marketing, and selling beverages, including energy drinks. Second Amended Complaint, [67] at ¶ 5. MEC is the owner of numerous trademark registrations for its MONSTER ENERGY and Claw Icon Marks, including, but not limited to, several United States Registrations (collectively, the "MONSTER ENERGY Trademarks"). *Id*. at ¶ 14. Additional factual assertions regarding MEC in Paragraphs 4 – 20 of the Second Amended Complaint are incorporated herein. *Id*. at ¶¶ 4 – 20.

Defendant conducts business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online store operating under the Defendant Internet Store. *Id*. at ¶ 21. Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell products using counterfeit versions of MEC's trademarks (collectively, the "Unauthorized Monster Energy Products") to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions regarding Defendant in Paragraphs 21 – 31 of the Second Amended Complaint are incorporated herein. *Id.* at ¶¶ 21-32.

MEC filed this action on June 9, 2017 [1], and soon thereafter filed an Amended Complaint [10]. On June 20, 2017, this Court granted MEC's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") and subsequently converted the TRO [26] to a

Preliminary Injunction [33]. Paragraph 8 of the TRO permitted MEC to complete service of process to Defendants by electronic mail or electronic publication at the Defendant Domain Names which were transferred to MEC's control. [26]. The Defendants were properly served with the Amended Complaint on June 28, 2017. [27]. Default Judgment was entered by this Court against all Defendants, except for Defendant divintymotor on August 2, 2017. [52]. This Court awarded MEC statutory damages of $250,000 per each of the defendants. *Id*.

On September 6, 2017, MEC filed a Second Amended Complaint against the Defendant. [67]. Defendant, through counsel, filed an Answer to the Second Amended Complaint on September 20, 2017. [68]. This Court held a settlement conference with the parties on November 1, 2017. [82]. When the parties were unable to reach a settlement, this Court set a discovery schedule and a further status date. [82].

MEC served its First Set of Interrogatories and First Set of Requests for the Production of Documents and Things (collectively, "Discovery Requests") on Defendant on November 9, 2017. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2. Defendant's response to the Discovery Requests was due December 11, 2017. *Id*. Defendant's counsel filed a Motion for Leave to Withdraw as Counsel on December 15, 2017. [83]. At the December 20, 2017 motion hearing, Defendant's counsel requested additional time for Defendant to respond to the Discovery Requests. Gaudio Declaration at ¶ 3. The Court ordered Defendant to respond to MEC's Discovery Requests by January 12, 2018. [86]. Defendant failed to respond to the Discovery Requests by the January 12, 2018 deadline, and MEC subsequently moved for entry of an Order to Show Cause. [87]. This Court held Defendant in contempt of the Court's December 20, 2017 order setting a January 12, 2018 deadline for Defendant to respond to

MEC's Discovery Requests. [90]. Per the Court's order, MEC was instructed to file a motion for entry default and default judgment the week of February 12, 2018. [90].

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi), MEC now moves this Court for an Order sanctioning Defendant by striking its Answer [68], and entering default and default judgment as to Defendant. Fed. R. Civ. P. 37(b)(2)(A)(vi). Further, MEC seeks an award of statutory damages against the Defendant as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting for use of counterfeits of the MONSTER ENERGY Trademarks on products sold through the Defendant Internet Store. MEC also seeks entry of a permanent injunction prohibiting Defendant from selling Unauthorized Monster Energy Products and using the MONSTER ENERGY Trademarks without authorization, and that all assets in Defendant's financial accounts operated by PayPal, Inc., as well as any newly discovered assets, be transferred to MEC.

### III. ARGUMENT

**A. JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant directly targets business activities toward consumers in Illinois and causes harm to MEC's business within this Judicial District. See [67] at ¶¶ 2, 21, 22 and 24; *uBID, Inc. v. GoDaddy*

3

*Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, commercial online marketplace account operating under the Defendant Internet Store, Defendant has targeted sales from Illinois residents by operating an online store that offers shipping to the United States, including Illinois and, on information and belief, has sold Unauthorized Monster Energy Products to consumers within the United States, including the State of Illinois. [67] at ¶ 2. Personal jurisdiction exists over Defendant since it directly targets its business activities toward consumers in the United States, including Illinois. Specifically, Defendant is reaching out to do business with Illinois residents by operating a commercial, interactive Defendant Internet Store through which Illinois residents can purchase Unauthorized Monster Energy Products. [67] at ¶ 2. *See, Monster Energy Co. v. Chen Wensheng, et al.*, 2015 U.S. Dist. Lexis 132283, at *11 (N.D. Ill. Sept. 29, 2015); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (unpublished) (Docket Nos. 68 and 69).

B.   **THIS COURT SHOULD ENTER DEFAULT AND DEFAULT JUDGMENT AS TO DEFENDANT PURSUANT TO RULE 37 AND THIS COURT'S INHERENT AUTHORITY.**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, if a party fails to obey an order to provide discovery, the Court may issue further just orders, including "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). "Judges must be able to enforce deadlines. Doing so means the use of sanctions, even severe ones such as default, when parties ignore the ongoing proceedings . . ." *Patterson v. Coca-Cola Bottling Co.*, 852

4

280, 283 (7th Cir. 1998) (citing *Matter of Kilgus*, 811 F.2d 1112, 1118 (7th Cir. 1987)). *See also Burberry Limited, et al. v. The Partnerships, et al.*, No. 14-cv-06287 (N.D. Ill. Feb. 12, 2015) (Docket Entry No. 85) (entering default and default judgment as to defendants who failed to comply with the court's orders). Moreover, federal courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," which encompasses "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Domanus v. Lewicki*, 288 F.R.D. 416, 419 (N.D. Ill. 2013), *aff'd*, 742 F.3d 290 (7th Cir. 2014).

The Court ordered Defendant to respond to MEC's Discovery Requests by January 12, 2018. [86]. Defendant failed to respond to the Discovery Requests by the January 12, 2018 deadline, and MEC subsequently moved for entry of an Order to Show Cause. [87]. This Court held Defendant in contempt of the Court's December 20, 2017 order setting a January 12, 2018 deadline for Defendant to respond to MEC's Discovery Requests. [90]. Accordingly, pursuant to Rule 37 of the Federal Rules of Civil Procedure and this Court's inherent authority, MEC respectfully requests that this Court strike Defendant's Answer [68], and enter default and default judgment against Defendant.

C.  **DEFENDANT IS LIABLE TO MEC AS A MATTER OF LAW ON EACH CAUSE OF ACTION ALLEGED IN THE SECOND AMENDED COMPLAINT.**

A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Further, consistent with previous similar cases in front of this Court and the Default Judgment [52] entered in this case awarding statutory damages of $250,000 per defendant, MEC requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against Defendant for use of counterfeit MONSTER ENERGY Trademarks on products sold through the Defendant Internet Store. MEC also seeks entry of a permanent injunction prohibiting Defendant from selling Unauthorized Monster Energy Products and using the MONSTER ENERGY Trademarks without authorization, and that all assets in Defendant's financial accounts operated by PayPal, Inc. and any newly identified accounts be transferred to MEC.

### 1. Trademark Infringement and Counterfeiting, False Designation of Origin, and Violation of the Illinois Uniform Deceptive Trade Practices Act

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001). This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

MEC alleged in its Second Amended Complaint that its MONSTER ENERGY Trademarks are highly distinctive marks, that Defendant has knowledge of MEC's rights in the MONSTER ENERGY Trademarks, that Defendant is not authorized to use the MONSTER

ENERGY Trademarks, and that Defendant's use of the MONSTER ENERGY Trademarks causes a likelihood of confusion. [67] at ¶¶ 26-28.

MEC alleged in its Second Amended Complaint that Defendant is using the federally registered MONSTER ENERGY Trademarks without authorization on the Unauthorized Monster Energy Products. [67] at ¶¶ 23 and 24. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation or sponsorship of Defendant's Unauthorized Monster Energy Products with MEC's genuine Monster Energy Products. *Id.* at ¶ 33.

MEC further alleged in its Second Amended Complaint that Defendant has engaged in acts violating Illinois law, including, but not limited to, passing off its Unauthorized Monster Energy Products as those of MEC, causing a likelihood of confusion and/or misunderstanding as to the source of its goods, causing a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with genuine Monster Energy Products, representing that its Unauthorized Monster Energy Products have MEC's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. [67] at ¶ 38.

Accordingly, MEC requests entry of judgment with respect to Counts I, II and III for willful trademark infringement and counterfeiting of the MONSTER ENERGY Trademarks, willful false designation of origin, and willful violation of the Illinois Uniform Deceptive Trade Practices Act against the Defendant.

D.     **MEC IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF**

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and

7

harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

MEC has expended substantial time, money and other resources in developing, advertising, and otherwise promoting the MONSTER ENERGY Trademarks. [67] at ¶ 19. As a result, products bearing the MONSTER ENERGY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products exclusively sourced from MEC. *Id.*

1. **Plaintiff Is Entitled to Statutory Damages for Trademark Counterfeiting**

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Defendant's PayPal account currently has an approximate balance of $201,000. Gaudio Declaration at ¶ 4. However, the lack of any other information regarding Defendant's sales and profits, especially given Defendant's failure to comply with this Court's Order to provide responses to MEC's Discovery Requests, makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *9, (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See*

8

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### i. Defendant's Trademark Counterfeiting Was Willful

As alleged in MEC's Second Amended Complaint, Defendant has knowingly and willfully used and continues to use the MONSTER ENERGY Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Monster Energy Products into the United States and Illinois over the Internet. [67] at ¶ 22. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. Further, in the Seventh Circuit "willful blindness" is equivalent to actual knowledge. *See Microsoft Corp. v. V3 Solutions, Inc.*, 2003 U.S. Dist. LEXIS 15008, at *44 (N.D. Ill. Aug. 27, 2003) (*citing Hard Rock Cafe Licensing Corp. v Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)). In the instant case, Defendant clearly had knowledge that its activities constituted infringement or at least a reckless disregard for MEC's rights in the MONSTER ENERGY Trademarks. [67] at ¶¶ 22-24; *see also* [15] and [16].

### ii. A High Statutory Damages Award Is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*,

9

2004 U.S. Dist. LEXIS 22563, *10; *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into

commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), MEC respectfully requests the Court's entry of an award of two hundred fifty thousand dollars ($250,000) against Defendant for willful trademark counterfeiting.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Monster Energy] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. The Monster Energy brand is a valuable brand, and MEC spends

considerable resources marketing and protecting it. [67] at ¶¶ 18-20. MEC achieved gross sales of over $3.5 billion in 2016. [41-1] at ¶ 5. Thus, MEC's request for a high statutory damages award should be given favorable consideration in view of the value of the Monster Energy brand and the extensive steps being taken by MEC to protect, promote and enhance it.

### 2. MEC Is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, MEC respectfully requests entry of a permanent injunction enjoining Defendant from infringing or otherwise violating MEC's registered intellectual property rights in the MONSTER ENERGY Trademarks, including at least all injunctive relief previously awarded by this Court to MEC in the TRO and Preliminary Injunction. MEC is also entitled to injunctive relief so it can quickly take action against any new online marketplace accounts that are identified, found to be linked to Defendant, and selling such products. *See Burberry Limited, et al. v. The Partnerships, et al*, No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.*, No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## IV. CONCLUSION

MEC respectfully requests that this Court enter an Order sanctioning Defendant by striking its Answer [68], and entering default and default judgment pursuant to Fed. R. Civ. P. 37 and this Court's inherent authority. MEC further requests that this Court award statutory damages in the amount of two hundred fifty thousand dollars ($250,000) for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c), and enter a permanent injunction order prohibiting Defendant from selling Unauthorized Monster Energy Products, and transferring all assets in Defendant's financial accounts to MEC.

Dated this 15th day of February 2018.　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Justin R. Gaudio_____
　　　　　　　　　　　　　　　　　　　Kevin W. Guynn
　　　　　　　　　　　　　　　　　　　Amy C. Ziegler
　　　　　　　　　　　　　　　　　　　Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　Jessica L. Bloodgood
　　　　　　　　　　　　　　　　　　　Greer, Burns & Crain, Ltd.
　　　　　　　　　　　　　　　　　　　300 South Wacker Drive, Suite 2500
　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　312.360.0080
　　　　　　　　　　　　　　　　　　　312.360.9315 (facsimile)
　　　　　　　　　　　　　　　　　　　kguynn@gbc.law
　　　　　　　　　　　　　　　　　　　aziegler@gbc.law
　　　　　　　　　　　　　　　　　　　jgaudio@gbc.law
　　　　　　　　　　　　　　　　　　　jbloodgood@gbc.law

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Monster Energy Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of February 2018, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to the e-mail addresses fdbmotor2011@hotmail.com, bhuolonggang@hotmail.com, aurelius121pay@hotmail.com, fdbmotorpay@hotmail.com, fdbracingpay@hotmail.com, fdbriderpay@hotmail.com, fdb-racing@hotmail.com, firedragonbros@gmail.com, cshuolonggang@yahoo.cn, cshuolonggang@hotmail.com, cshuohonggang@hotmail.com associated with Defendant divintymotor that includes a link to said website.

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Attorneys for Plaintiff Monster Energy Company*